**PARKING COMPANY OF AMERICA, INC., a California corporation**

v.

**The UNITED STATES.**

No. 580–83C.

United States Claims Court.

May 8, 1984.

Shearn H. Platt, San Diego, Cal., for plaintiff.

Leodis C. Matthews, San Diego, Cal., with whom were Acting Asst. Attys. Gen. Richard K. Willard, David M. Cohen and Stephen G. Anderson, Washington, D.C., for defendant.

## OPINION ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

WHITE, Senior Judge.

The plaintiff, Parking Company of America, Inc., sues to recover from the Government the sum of $62,530 allegedly due under an implied contract between the plaintiff and the United States.

The plaintiff, seeking direct access to this court from an adverse decision by a contracting officer of the General Services Administration (GSA), filed its complaint on September 19, 1983.

On January 9, 1984, the defendant filed a motion to dismiss the complaint, on the ground that the court does not have jurisdiction to consider the claim because (according to the defendant) the plaintiff's claim for $62,530 did not contain the certification required by 41 U.S.C. § 605(c)(1) (1982) with respect to contract claims in excess of $50,000. This section is part of the Contract Disputes Act, as codified.

As the parties have submitted a number of documents for the consideration of the court in connection with the defendant's motion, the motion will be treated as a motion for summary judgment.

The pending motion presents to the court the question of whether the certification requirement in 41 U.S.C. § 605(c)(1) applies to the plaintiff's claim.

For the reasons stated subsequently in the opinion, it is concluded that the plaintiff was required to certify its claim, and, accordingly, that the defendant's motion for summary judgment should be granted.

### The Facts

There is no controversy between the parties regarding the facts set out in this part of the opinion.

On or about November 10, 1980, the defendant, acting through the GSA, issued an invitation for bids on the lease of 3.65 acres of federally owned land located in San Ysidro, California. The plaintiff submitted a bid to lease the property; and, on or about December 5, 1980, the plaintiff signed a lease for the property, covering a 5-year period from December 1, 1980, through December 31, 1985.

The leased property, described as unimproved real property, was to be used by the plaintiff as a commercial parking lot. It was developed for that purpose at the time of the lease.

As partial consideration under the lease agreement, the plaintiff provided the GSA with 20 clearly marked parking spaces, for the exclusive use of the GSA. The GSA assigned the 20 spaces for the parking of government-owned motor vehicles used by the Customs Service, the Department of Agriculture, the Immigration and Naturalization Service, and the GSA.

Many United States Border Patrol agents were assigned to a nearby patrol station and occupied a building near the plaintiff's parking facility. As a matter of personal convenience, many of these agents parked their privately owned motor vehicles on the plaintiff's parking facility. Occasionally, Border Patrol agents were given permission by the GSA to use some of the 20 parking spaces assigned to government agencies. Usually, however, the parking spaces used by Border Patrol agents were outside the 20 clearly marked spaces that were reserved for government agencies. The number of excessive parking spaces used by the agents during a period beginning March 15, 1981, and extending through April 30, 1982, totaled 12,506.

On May 12, 1982, the plaintiff submitted to the GSA an invoice requesting $62,530 in payment for the Border Patrol agents' use of the plaintiff's parking facility. This invoice was returned to the plaintiff by the GSA's Field Office Manager with the following explanation:

> Because the General Services Administration did not request the additional parking spaces we are not contractually obligated to pay for their use. Any arrangement for the use of more than the 20 spaces contracted for was of necessity between [the plaintiff] and the individuals concerned.  * * *

On July 6, 1982, a letter demanding payment of $62,530 once again was sent to the GSA's Field Office Manager, who, this time, forwarded the demand to the contracting officer. On October 6, 1982, the contracting officer denied the plaintiff's claim.

The plaintiff's claim did not contain the sort of certification contemplated by the Contract Disputes Act.

The plaintiff subsequently filed a complaint in this court on September 19, 1983. This was followed by the filing of the motion that is now before the court.

### Certification Requirement

It is provided in 41 U.S.C. § 605(c)(1) that if a claim submitted to a contracting officer is subject to the Contract Disputes Act and is in excess of $50,000, it must be certified by the contractor that the claim is made in good faith, that the supporting data are accurate and complete, and that the amount requested accurately reflects what the contractor believes is due from the Government. The Contract Disputes Act is applicable to (*inter alia*) "any express or implied contract * * * entered into by any executive agency for—(1) the procurement of property, other than real property in being * * *."

The defendant's motion asserts that the court lacks jurisdiction to consider the plaintiff's claim because it is based on an alleged contract, implied in fact, with an executive agency, it is for an amount in excess of $50,000, and it was not properly certified under the Contract Disputes Act when it was submitted to the contracting officer.

On the other hand, the plaintiff takes the position that its claim is founded upon an implied contract for the procurement of real property in being and, therefore, is outside the scope of the Contract Disputes Act and its certification requirement.

### Discussion

The basis for the plaintiff's claim is that the Government allegedly derived benefit from the use of the plaintiff's parking facility by Border Patrol agents, in excess of the 20 parking spaces assigned to government agencies; and, therefore, that a contract implied in fact, obligating the Government to pay for the use of such parking spaces, arose between the Government and the plaintiff.

Assuming (for the purpose of discussion) the existence of a contract implied in fact between the Government and the plaintiff, the crucial question, in passing on the defendant's motion, is whether the implied contract is one for the "procurement of * * real property in being" and, thus, is outside the scope of the Contract Disputes Act.

Although the meaning of the phrase, "procurement of * * * real property in being," apparently has not previously received judicial consideration in connection with the Contract Disputes Act, it seems logical to conclude that this exception to the applicability of the Contract Disputes Act relates only to the procurement of at least some part of the elements which constitute the ownership of realty, even if the exception is not limited to the acquisition for the Government of the absolute fee in realty. Certainly, the statutory phrase, "procurement of * * * real property in being," connotes something more than the temporary use of a parking space by a government employee. Such use would be in the nature of a mere license to enter the premises and use a parking space for a temporary period of time.

Accordingly, it is concluded that the alleged contract, implied in fact, on which the plaintiff relies, based upon the irregular use by government employees of parking spaces on the plaintiff's parking lot for the temporary storage of their privately owned automobiles, is not a contract for the "procurement of * * * realty in being," and, therefore, was not excluded from the applicability of the Contract Disputes Act. As the plaintiff's claim is in excess of $50,000, it was necessary for the plaintiff, in submitting the claim to the contracting officer, to certify the claim in accordance with the certification requirement prescribed by the

Contract Disputes Act. The plaintiff did not provide the certification mandated by the statute.

Proper certification is a jurisdictional prerequisite to the maintenance by a government contractor of a direct-access action in this court. *W.M. Schlosser Co., Inc. v. United States*, 705 F.2d 1336, 1338 (Fed.Cir.1983); *W.H. Moseley Co. v. United States*, 230 Ct.Cl. 405, 406, 677 F.2d 850, 851 (1982); *Warchol Construction Co. v. United States*, 2 Cl.Ct. 384, 388 (1983). Accordingly, the lack of a proper certification in this case deprives the court of jurisdiction to consider the plaintiff's claim.

It necessarily follows that the defendant's motion should be granted.

### Conclusion

It appears from the papers before the court that there is no genuine issue as to any material fact necessary for the determination of the cause, and that the defendant is entitled to a judgment as a matter of law.

The defendant's motion for summary judgment is therefore granted.

The complaint will be dismissed, but the dismissal will be without prejudice, so that the plaintiff .may have an opportunity to resubmit a properly certified claim to the contracting officer, if it wishes to do so. *See W.M. Schlosser Co., Inc. v. United States, supra,* 705 F.2d at 1340; *Skelly & Loy v. United States,* 231 Ct.Cl. ——, ——, 685 F.2d 414, 419 (1982); *Warchol Construction Co. v. United States, supra,* 2 Cl.Ct. at 393; *Fidelity & Deposit Co. of Maryland v. United States,* 2 Cl.Ct. 137, 146 (1982).

IT IS SO ORDERED.