**AL MUNFORD, INC. d/b/a Munford Construction Company, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 93–177 C.**

United States Court of Federal Claims.

Dec. 6, 1993.

---

Thomas J. Knight, Anniston, AL, with whom was Dennis G. Nichols, for plaintiff.

Dean L. Grayson, Washington, DC, with whom was Assistant Director Bryant G. Snee, for defendant.

## ORDER

MOODY R. TIDWELL, III, Judge.

This case is before the court on defendant's motion to dismiss for lack of subject

matter jurisdiction under RCFC 12(b)(1) and (4). For the reasons set forth below, the court denies defendant's motion.

## FACTS

The United States awarded contract DABT02-91-C-0022 to Munford Construction Company on August 21, 1991 for building and repairing washracks at Fort McClellan, Alabama. Differences arose early in the contract performance period and months of disagreement followed. During this period, the contracting officer and Munford exchanged a series of letters detailing their grievances; the contracting officer persistently complained about Munford's performance delays and Munford responded by reciting events it alleged excused the delays. In essence, plaintiff contended that the government added cost and time to the project by failing to timely direct plaintiff on problems caused by adverse soil and weather conditions and by insisting on a particular tank supplier, which unduly delayed materials procurement. The government, on the other hand, cited a number of performance deficiencies, including: (1) failure to commence work on time, (2) failure to make timely progress, (3) failure to provide a Master Progress Schedule, and (4) nonconforming performance.

The government terminated the contract for default on April 17, 1992. Plaintiff asserted that the termination was unjustified and discriminatory and on June 1, 1992 filed suit in Federal District Court in the Northern District of Alabama, Eastern Division, seeking to reinstate the contract and money damages. However, after plaintiff's surety undertook completion of the contract, the parties filed a joint motion for dismissal, which the district court granted on September 8, 1992. The joint agreement stipulated that plaintiff would pursue its monetary claims under the Contracts Disputes Act of 1978, 41 U.S.C. §§ 601–613 (1988) (CDA).

As part of its case in the district court, Munford issued a subpoena for defendant's contract administrator, to which it attached an itemized list of expenses that contained the certification language specified by the CDA. Subsequently, on August 12, 1992, plaintiff sent the contracting officer a letter stating:

> If there is any confusion on the part of the contracting officer about whether the claim was intended by Munford to be processed, then it is hoped and expected that this letter will satisfy any such confusion because the document is certainly a monetary claim presented to the contracting officer for payment.

On March 29, 1993, plaintiff filed an action in this court, seeking sums owed under the contract and other money damages, a finding of wrongful termination, and other relief arising from the contracting officer's denial of plaintiff's claim under the disputes clause. Plaintiff alleged jurisdiction under the CDA. Defendant responded with a motion to dismiss, alleging that plaintiff never submitted a "claim" to the contracting officer, a prerequisite to this court's jurisdiction under the CDA.

## DISCUSSION

 In considering defendant's motion to dismiss for lack of subject matter jurisdiction, the court must accept as true any undisputed allegations of fact made by the non-moving party. *Reynolds v. Army and Air Force Exch. Serv.*, 846 F.2d 746, 747 (Fed. Cir.1988). When disputed facts relevant to the issue of jurisdiction exist, the court may decide those questions of fact. *Id.; Hedman v. United States*, 15 Cl.Ct. 304, 306 (1988). When subject matter jurisdiction is questioned, the non-moving party bears the burden of establishing the court's jurisdiction. *Reynolds*, 846 F.2d at 748.

I. The Jurisdictional Prerequisites of the Contracts Disputes Act

 This Court's jurisdiction is defined by the Tucker Act. 28 U.S.C. § 1491 (Supp. 1992). The Tucker Act alone does not create a substantive right to recover money, but instead waives sovereign immunity under specific conditions. *United States v. Mitchell*, 445 U.S. 535, 538, 100 S.Ct. 1349, 1351, 63 L.Ed.2d 607 (1980). In order for this court to exercise jurisdiction over plaintiff's claims, the claims must be predicated on a constitu-

tional provision, statute, executive department regulation, or an express or implied contract with the United States. 28 U.S.C. § 1491(a)(1) (Supp.1992); *Nussinow v. United States,* 23 Cl.Ct. 556, 559 (1991). In this case, plaintiff asserted jurisdiction under the CDA, which applies to "any express or implied contract ... entered into by an executive agency for ... the disposal of property." 41 U.S.C. § 602(a)(4). Under the CDA, jurisdiction over a claim vests in this court only after a contractor has submitted a valid claim to the contracting officer and the contracting officer has denied the claim or failed to deny it within sixty days. 41 U.S.C. §§ 605, 609; *Paragon Energy Corp. v. United States,* 645 F.2d 966, 227 Ct.Cl. 176, 184 (1981).

■ Under the CDA, "[a]ll claims by a contractor against the government relating to a contract shall be in writing and shall be submitted to the contracting officer for a decision." 41 U.S.C. § 605(a). To satisfy the CDA, a claim need not contain any particular language or conform to any specific format. *See Contract Cleaning Maintenance, Inc. v. United States,* 811 F.2d 586, 592 (Fed.Cir.1987). The CDA merely requires the contractor to "submit in writing to the contracting officer a clear and unequivocal statement that gives the contracting officer adequate notice of the basis and amount of the claim." *Id.,* at 592 (citing *Tecom, Inc. v. United States,* 732 F.2d 935, 936–37 (Fed.Cir.1984)); *Metric Constr. Co. v. United States,* 1 Cl.Ct. 383, 392 (1983). Such a statement may be in the form of one or several documents. *Contract Cleaning,* 811 F.2d at 592.

■ Moreover, the request for payment must be "in dispute" at the time of the claim. 48 C.F.R. § 33.201 (1992); *Dawco Constr., Inc. v. United States,* 930 F.2d 872 (Fed.Cir.1991). As defendant noted, "a claim only exists when the parties clearly have abandoned negotiations and the amount claimed is definitely in dispute." *Sun Eagle Corp. v. United States,* 23 Cl.Ct. 465, 473 (1991). One-sided requests for payment or correspondence indicating disagreement do not, in themselves, constitute "claims" under the CDA, although they may proceed and foreshadow a subsequent dispute. *Dawco,*

930 F.2d at 878. It is the contractor's request for a final decision from the contracting officer and the contracting officer's subsequent rendering of the decision, or failure to do so within sixty days, that triggers the breakdown of negotiations that the statute recognizes as a "dispute." *Id.* The purpose of this seemingly technical requirement is to ensure that neither party makes unilateral decisions about the contract and that the both parties make every effort to resolve their differences outside of the court. *Transamerica Ins. Corp. v. United States,* 973 F.2d 1572, 1577 (Fed.Cir.1992).

## II. Defendant's Motion

In support of its motion, defendant argued that plaintiff's purported claim (1) failed to state any grounds for relief, (2) failed to request a contracting officer's decision, and (3) was not "in dispute" when submitted. In response, plaintiff averred that, taken together, its submissions to the contracting officer provided the contracting officer with adequate notice of the basis and amount of its claims. Before deciding the merits of defendant's motion, the court first must decide whether all of plaintiff's submissions may be considered part of its "claim".

### A. The Court Must Consider All of the Documents That Plaintiff Alleged Were Part of Its Claim.

■ Plaintiff alleged that its claim before the contracting officer consisted of: (1) its correspondence with the contracting officer during the period of contract performance, (2) the district court complaint, (3) its certified list of expenses, and (4) its August 12, 1992 letter. As a general rule, several documents, taken together, might constitute a valid claim under the CDA. *Contract Cleaning,* 811 F.2d at 592. However, the special circumstances of this case require that the court carefully examine the facts before determining the content of plaintiff's claim.

■ As stated above, jurisdiction under the CDA vests in this court only after a contractor has submitted a valid claim to the contracting officer and the contracting officer has denied it or failed to deny it within sixty

days. 41 U.S.C. §§ 605, 609; *Paragon Energy*, 645 F.2d 966, 227 Ct.Cl. at 184. In this case, because the contracting officer never explicitly denied plaintiff's claim, jurisdiction in this court must derive from the CDA's implied denial provision. A contractor may invoke that provision only if the contracting officer was obligated to deal with the claim. *White Plains Iron Works, Inc. v. United States*, 229 Ct.Cl. 626, 629-30 (1981); *Peterson Builders, Inc. v. United States*, 27 Fed. Cl. 443, 445 (1993); *Boeing Co. v. United States*, 26 Cl.Ct. 529, 534 (1992).

■ In this case the contracting officer was not obligated to deal with plaintiff's claim when it received plaintiff's district court complaint, certified list of expenses, and August 12, 1992 letter. In fact, the contracting officer received each of those documents at a time when it had no authority to act on plaintiff's claim. The power to handle a claim against the United States that is the subject of litigation, or any claims related to such a claim, rests solely with the Department of Justice. 28 U.S.C. § 516 (1988); *Peterson Builders*, 27 Fed.Cl. at 445. The contracting officer received the above documents while plaintiff's complaint in the district court was pending. Together, those documents purported to state a claim that was essentially the same as plaintiff's claim in the district court.

■ In summary, the CDA does not vest this court with jurisdiction over a claim unless: (1) the plaintiff first submitted a valid claim to the contracting officer, *Paragon Energy*, 645 F.2d 966, 227 Ct.Cl. at 184; (2) the contractor was obliged to act on the claim, *White Plains Iron Works*, 229 Ct.Cl. at 629-630; and (3) the contracting officer explicitly or impliedly denied the claim, *Paragon Energy*, 645 F.2d 966, 227 Ct.Cl. at 184. In this case the contracting officer received three of the four documents that plaintiff alleged were part of its claim at a time when it lacked authority to deal with the claim. Hence, when the contracting officer received those documents, it was not obliged to act on them. Thus, it would seem plaintiff improperly included them in justifying the existence of a claim before the contracting officer.

Nevertheless, the court finds that plaintiff's claim before the contracting officer includes the district court complaint, plaintiff's list of certified expenses, and plaintiff's June 12, 1992 letter. While the contracting officer lacked authority to deal with plaintiff's claim while the district court action was pending, the contracting officer regained such authority when the district court dismissed plaintiff's action. The interim period, between dismissal of the district court case and plaintiff's filing in this court, lasted more than six months. Consequently, all of the documents plaintiff claims were part of its claim were before the contracting officer for more than sixty days during a time when the contracting officer had the power to act on plaintiff's claim. Thus, this court finds that the contractor was obliged to consider all of the documents that plaintiff alleged were part of its claim.

### B. Plaintiff's Alleged Claim Satisfied the Threshold Requirements of the CDA.

■ Caselaw requires that courts employ a common sense approach in determining whether a contractor has met the requirements of the CDA. *Transamerica*, 973 F.2d at 1579. The critical issue is whether the contractor's submissions to the contracting officer, taken together, provided adequate notice of the basis and amount of the claim. *Id.* at 1578; *Contract Cleaning*, 811 F.2d at 592. Applying this approach to the case at bar, the court finds that plaintiff's submissions, taken together, met the threshold requirements of the CDA. Plaintiff's certified list of expenses together with plaintiff's June 12, 1992 letter adequately notified the contracting officer that Munford sought a final decision and that the amount claimed was "in dispute." Plaintiff's district court complaint and pre-litigation correspondence with the contracting officer provided the contracting officer with the basis of the claim.

In *Transamerica* the Court of Appeals for the Federal Circuit annunciated a standard for determining whether a claim adequately notified the contracting officer that it was seeking a final decision. It stated:

This court is loathe to believe that a reasonable contractor would submit to the

contracting officer a letter containing a payment request after a dispute had arisen solely for the contracting officer's information and without at the very least an implied request that the contracting officer make a decision as to the entitlement. Any other finding offends logic.

*Transamerica,* 973 F.2d at 1578. Similarly, this court is loathe to believe that the contracting officer would fail to understand that plaintiff's submission of a list of expenses *containing the certification language* required by the CDA was a request for a final decision on a claim. Certification is a requirement imposed by the CDA for all claims exceeding $50,000. 41 U.S.C. § 605(c)(1) (1988). There is no reason for a contractor to certify a document that it did not consider to be a claim. Moreover, plaintiff's June 12, 1992 letter erased any reasonable doubt the contracting officer may have had. The letter stated: "the document [list of expenses] is certainly a monetary claim presented to the contracting officer for payment." A request for final payment could not be more clear.

In arguing that plaintiff's claim did not state any grounds for relief, defendant considered only plaintiff's certified list of expenses, stating: "Munford's 'claim' shows it to be only an itemized list of purported costs.... There is no discission [sic] of or even allusion to any rationale as to why the Government should pay these costs." Defendant did not consider the contracting officer's ongoing correspondence with plaintiff and plaintiff's district court complaint. Prior to filing a complaint in the district court, plaintiff sent four letters to the contracting officer complaining of performance delays precipitated by government fault. Plaintiff reiterated this grievance in the complaint it filed in the district court, stating: "it was ... Defendant's conduct taken together with adverse sub-soil conditions, and the acts of third parties for whom the Plaintiff is not responsible, which have led to the delay."

The court finds that these documents provided an adequate basis for the expenses plaintiff claimed. A finding otherwise would require a claim submitted to a contracting officer to include more detail than a claim filed in district court. The court refrains from setting such a burdensome standard. Instead, it finds that a reasonable contractor would read plaintiffs submissions, taken together, as requesting final payment for itemized expenses that resulted from cost overruns precipitated by government-caused delays. Accordingly, plaintiff's claim fulfilled the "basis" requirement of the CDA.

█ Finally, the government asserted that plaintiff's claim was not properly in dispute at the time of submission and therefore, could not properly be decided by the contracting officer. *Sun Eagle,* 23 Cl.Ct. at 473. However, because case law establishes that the end of negotiations can be triggered by the contractor's request for a final decision on a CDA claim, and plaintiff submitted such a request, the government's argument is without merit. *Dawco,* 930 F.2d at 878. Defendant also suggested, incorrectly, that a willingness by plaintiff to continue negotiations—or any communication that is negotiation-oriented rather than dispute-oriented—necessarily bars a request for final decision. Defendant intimated that negotiation removes the matter from a dispute posture. However, there is no necessary inconsistency between the existence of a valid CDA claim and an expressed desire to continue to mutually work towards a claim's resolution. *Contract Cleaning,* 811 F.2d at 592. A finding otherwise would be contrary to the purpose of the CDA, which is to "induce resolution of more contract disputes by negotiation prior to litigation." *Transamerica,* 973 F.2d at 1579 (quoting S.Rep. No. 1118, 95th Cong., 2d Sess. 1 (1978) *reprinted in* 1978 U.S.C.C.A.N. 5235).

## CONCLUSION

While not a model of clarity or form, the court finds that plaintiff's submissions to the contracting officer met the threshold statutory and regulatory requirements of the CDA. Accordingly, defendant's motion to dismiss is denied.

**IT IS SO ORDERED.**